## Case No. 918.

BANK OF THE UNITED STATES v. HATCH.

[1 McLean, 90.] [1]

Circuit Court, D. Ohio.   July Term, 1830. [2]

NEGOTIABLE INSTRUMENTS — NOTICE OF DISHONOR —DISCHARGE OF ENDORSER—EXTENSION OF TIME.

1. A notice to the endorser of the dishonor of the bill, left with a boarder at the same house with the endorser, with a request to hand it to him, is sufficient.

[See McMurtrie v. Jones, Case No. 8,905.]
[See note at end of case.]

2. Any agreement made between the holder of the bill and the drawer, which shall suspend the right of the holder to prosecute on the bill, will discharge the endorser.

[Followed in Dennis v. Rider, Case No. 3,797. Distinguished in Varnum v. Bellamy, Id. 16,886. Cited in Tiernan v. Woodruff, Id. 14,028.]

[See McLemore v. Powell, 12 Wheat. (25 U. S.) 554; Seventh Ward Bank v. Hanrick, Case No. 12,678; Varnum v. Milford, Id. 16,890; Morgan v. Tipton, Id. 9,809; Low v. Underhill, Id. 8,561; Cooper v. Gibbs, Id. 3,194; Valley Nat. Bank v. Meyers, Id. 16,821.]

[See note at end of case.]

3. Such an agreement also suspends the right of the endorser, to pay the bill and enforce payment from the drawer.

[See note at end of case.]

At law.  This action [by the Bank of the United States] is a scire facias to make the defendant a party to a judgment, which was obtained by the plaintiff against Elijah Pearson. The writ was issued against Pearson and [William S.] Hatch, and being non est as to Hatch, a judgment was entered against Pearson. [Judgment for defendant. This was afterwards affirmed by the supreme court. Bank of U. S. v. Hatch, 6 Pet. (31 U. S.) 250. See note at end of case.]

Mr. Worthington, for plaintiffs.
Mr. Hammond, for defendants.

OPINION OF THE COURT.  This proceeding is authorized by a statute of Ohio, and the defendant is permitted to make any defence which he could have made to the original action.

The jury found a special verdict, which states the facts of the case as follows: "E. Pearson made the bill of exchange, a copy of which is attached to the declaration of the said plaintiff in the original suit against Pearson, the drawer of said bill, and that the said bill was regularly endorsed by the present defendant, Hatch." "They also find that on the 25th day of July, in the year 1820, said bill of exchange was duly protested for non-payment; and that on said day last mentioned, and on the succeeding day, the said defendant, Hatch, was boarding at the house of Henry Bainbridge, in the city of

[1] [Reported by Hon. John McLean, Circuit Justice.]
[2] [Affirmed in 6 Pet. (31 U. S.) 250.]

Cincinnati; that on the 26th day of July, in the year 1820, the notary public, by whom said bill was protested, called at the house of said Bainbridge and enquired for said Hatch, and was informed by a Mr. Young that said Hatch was not within; the said notary then left a written notice of said protest with said Young, who was at that time in the house aforesaid, and requested him to deliver said notice to said Hatch; and that in the summer of said year 1820, said Young was a boarder at said house. They also find that a suit was commenced against said Pearson, the drawer of said bill of exchange, which suit stood for trial at the September term, in the year 1822, of the circuit court of the United States for the district of Ohio. They also find, that previous to the year 1822, one Griffin Yeatman was confined in the jail limits of Hamilton county, in said state, on a ca. sa., issued at the instance of, and on a judgment in favor of said Pearson. That said Yeatman was a material witness for the plaintiff in a number of suits then pending in said court; that one George W. Jones, who was then agent for plaintiffs, and one William M. Worthington, the then attorney for the plaintiffs, agreed with the said Pearson, that in consideration, he, the said Pearson, would permit the said Yeatman to leave the jail limits and attend said court during the term aforesaid, then the suit then pending in said court against said Pearson on said bill of exchange, should be continued without judgment until the term of said court next ensuing said September term, 1822. That in pursuance of this agreement, the said Pearson permitted the said Yeatman to leave said jail limits and attend said court; and that said suit against said Pearson was continued agreeably to said agreement."

On these facts two questions arise. 1. Whether the notice of the dishonor of the bill to Hatch was sufficient. 2. Whether the agreement to continue the cause of the Bank v. Pearson, under the circumstances, discharged the endorser.

The rule is well established, that a notice left at the usual place of abode of the endorser, is sufficient to charge him. The notice may be handed to a servant of the house, or to the landlord, if the endorser be a lodger. Or the notice may be left at his office where his principal business is transacted. In this case, the notice was not handed to a servant, or the landlord of the house where Hatch boarded, but to a boarder at the same house, with a request to hand it to Hatch. The boarder, it would seem, would be at least as likely to deliver the notice, as a servant or the landlord. And if the service of the notice come within the reason of the rule established as to other means of conveying it, it must be held sufficient. The very highest degree of diligence in conveying the notice is not required. Such steps must be taken to convey it, as in the

ordinary course of things, will place it in the hands of the endorser. And we think, in the present case, that the notice being left with a fellow boarder, affords a reasonable presumption that it was delivered to Hatch, and, therefore, it was sufficient.

The discharge of the endorser depends upon the extent of the agreement between the agents of the bank and Pearson. Did it suspend the rights of the bank, to prosecute the suit against Pearson? Would it have been a violation of the agreement, if the bank had discontinued the suit and brought another action? The agreement was that "the suit should be continued without judgment until the term of said court next ensuing said September term, 1822." And as a consideration on which this continuance was agreed upon, Pearson discharged Yeatman, the witness desired by the bank, from an execution. By this discharge, Pearson gave up what in law was a satisfaction of his judgment, and in all probability lost all further recourse against Yeatman for his debt. And this was done to benefit the bank. This constitutes a good consideration for the agreement. The agreement unquestionably suspended all right in the bank to prosecute the suit for the time specified, and also, as we think, all right to take any other step to enforce the payment of the note. An endorser has a right at any time to pay the bill and to be subrogated to all the rights of the holder. And if the holder enter into any agreement, which may be enforced, that shall suspend his recourse against the drawer, the endorser is discharged. He is discharged because his right, by paying the bill, to prosecute the drawer is also suspended. In the present case had the bank attempted to prosecute the suit, in violation of the agreement, there can be no doubt that a court of equity would have enjoined it; or, perhaps, on motion the court at law would have ordered the proceeding to be suspended. Here then was an agreement which suspended all right in the bank against Pearson on the bill, for a certain period; and this agreement could have been inforced at law, or in a court of equity. And as by this arrangement the right of Hatch to prosecute Pearson was also suspended, he is discharged from his indorsement. This principle is decided, substantially, in the case of McLemore v. Powell, 12 Wheat. [25 U. S.] 554. In that case, however, the agreement between the holder and drawer of the bill to give time was voluntary and without consideration, which did not legally bind the parties; and therefore the court held, the indorser was not discharged. But if the agreement had been made on a valuable consideration, the court would have held, as appears from the opinion, that the indorser was discharged. This doctrine is clearly stated in the elementary writers, Bayley, Bills, 234, and others, as established by adjudged cases. 8 East, 576; 1 Bay, 177; [Robertson v. Vogle,] 1 Dall. [1 U. S.] 252; 1 Johns. Cas. 107, 131; 3 Taunt. 130.

[NOTE. On writ of error, this judgment was affirmed by the supreme court. Mr. Justice Story, in delivering the opinion of the court, said:

"In cases of this nature, the law does not require the highest and strictest degree of diligence in giving notice, but such a degree of reasonable diligence as will ordinarily bring home notice to the party. It is a rule founded upon public convenience and the general course of business, and only requires that in common intendment and presumption the notice is by such means as will be effectual. In the present case the notice was left at a private boarding house, where Hatch lodged, which must be considered, to all intents and purposes, his dwelling house. It was left, then, at the proper place; and if the delivery had been to the master of the house, or to a servant of the house, there could be no doubt that it would have been sufficient. Stedman v. Gooch, 1 Esp. 4. The notary called at the house, and, upon inquiry of a fellow boarder and inmate of the house, he was informed that Hatch was not within. He then left the notice with the fellow boarder, requesting him to deliver it to Hatch. The latter must necessarily be understood, by receiving the notice under such circumstances, impliedly to engage to make the delivery. The question, then, is whether such a notice, so delivered, does not afford as reasonable a presumption of its being received as if delivered to a tenant of the house. * * * Boarders at the same house may be presumed to meet daily, and to feel some interest in the concerns of each other, and to perform punctually such common duties of civility as this. In our large cities, many persons engaged in business live at boarding houses, in this manner. It is not always easy to obtain access to the master of the house, or to servants who may be safely intrusted with the delivery of notices of this sort. A person who resides in the house upon a footing of equality with all the guests may well be supposed to feel a deeper interest in such matters than a mere servant, whose occupations are pressing and various, and whose pursuits do not lead him to place so high a value upon a scrupulous discharge of duty. * * *

"The other question is one of more nicety, and not less important. * * * The true inquiry is whether the parties did or did not intend a surceasing of all legal proceedings during the period. We think that the just and natural exposition of the contract is that they did. * * * If the bank could not have any remedy on the bill to recover payments, but was bound to wait until the next term of the circuit court, the defendant Hatch, as indorser, could not, by paying the bill, place himself in a better situation. He would be liable to the same equities, under the agreement suspending the remedy, as the bank. * * * Upon the whole, we are of opinion, upon the ground of the agreement stated in the special verdict being a virtual discharge of the indorser, that the judgment of the circuit court ought to be affirmed, with costs." Bank of U. S. v. Hatch, 6 Pet. (31 U. S.) 250.]

BANK OF THE UNITED STATES, (HUBBARD v.) See Case No. 6,815.

BANK OF THE UNITED STATES. (JACKSON v.) See Case No. 7,131.